MANFREDI, Judge.

BACKGROUND

This is an appeal of a revocation of a gaming license by the Office of Director of Regulations pursuant to an order dated December 10, 2002. The appeal is decided pursuant to the provisions of Tribal Ordinance 2002-13, which was adopted on December 11, 2002, the day before the decision in this case. The Mohegan Tribal Gaming Commission originally suspended Mr. Shockley’s license on November 4, 2002 and he subsequently appealed that decision to the Office of Director of Regulation.
A hearing was held before the Office of Director of Regulation Hearing Officer on November 19, 2002. The Officer’s Findings of Fact and Conclusions of Law are set forth in his decision dated December 12, 2002 referred to above.
The factual incident upon which the decision to suspend and then revoke Mr. Shockley’s license occurred on October 5, 2002 in the casino.
Mr. Shockley was also terminated by the casino for fighting with a patron as indicated in the Findings of Fact Paragraph Four. He subsequently appeared before a Board of Review on October 28, 2002 at which time the Board reversed the decision to terminate Mr. Shockley. Subsequently the Gaming Commission suspended his license as noted above.
This appeal lies from the revocation of the license and not Mr. Shockley's termination of employment.
Essentially, the incident which gave rise to the revocation of Mr. Shockley’s license occurred on October 5, 2002 when Mr. Shockley punched a patron who had pushed him. A review of the record indicates that prior to the actual altercation the patron in question was drunk, and had been abusive and disorderly in the casino towards both dealers and other patrons. Mr. Shockley has stated that the patron called him a “f—-n-” prior to the altercation. The Hearing Officer below made no finding to this particular factual matter but it is clear that this epithet was uttered at least once by the patron during the episode. There is no reason to disbelieve Mr. Shockley’s statement that it was uttered before the altercation took plaee also.
In any event, in his Findings of Fact and Conclusions of Law, Paragraph Eight the Hearing Officer states:
“In the first taped view of the incident, Mr. Gibson is seen pushing Mr. Shockley followed by Mr. Shockley’s punch in self defense. At this point the issue of self-defense is no longer a consideration as Mr. Shockley appears to want to fight Mr. Gibson. Had the respondent been acting in self-defense, he would have retreated after the initial blows. On the video tape, it is quite clear that Mr. Shockley does not retreat, but in fact ‘stands his ground’ and is seen motioning to Mr. Gibson as if to indicate that the incident isn’t over.”
DISCUSSION
Pursuant to the Tribal State Compact between the Mohegan Indian Tribe and the State of Connecticut executed on May *552 17, 1994 the standard for revocation of a license is set out in Section 5(g); Section 5(g) refers back to Section 5(g) for the criteria necessary for either the granting or revocation or suspension of a license. Essentially, Section 5(e) permits the denial or revocation of a license where:
“1. It has been determined that a person’s activities, criminal record, reputation, habits and associations pose a threat to the effective regulation of gaming or create or enhance the chance of unfair or illegal practices, methods and activities in the conduct of the gaming activities, or
2.The applicant has failed to provide any information reasonably required to investigate the application for a gaming employee license or to reveal any fact material to such application, or has furnished any information which is untrue or misleading.”
It is also important to note at this point that this ease is not an appeal of a bar order pursuant to Section 7 of the Tribal Compact.
Pursuant to Tribal Ordinance 2002-13 Subsection 3(j):
“The court shall not substitute its judgment for that of the agency as to the weight of evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
1. In violation of constitutional or statutory provisions;
2. In excess of the statutory authority of the agency;
3. Made upon unlawful procedure;
4. Affected by other error of law;
5.Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
fi. Arbitrary or capricious as characterized by abuse of discretion or clearly unwarranted exercise of discretion.
If the court finds such prejudice, it shall sustain the appeal, and if appropriate, may render a judgment under Subsection (k) of this Section or remand the case for further proceedings. For purposes of this Section, a remand is a final judgment.”
The Court finds that the Hearing Officers decision is in violation of the statutory provisions, affected by error of law, and clearly erroneous in view of the reliable, probative and substantial evidence of the whole record.
Pursuant to Article III of Tribal Ordinance Number 95-4 (An Ordinance Establishing the Gaming Disputes Court) the substantive law to be utilized by the Court in making its determinations includes the General Statutes of the State of Connecticut except to the extent that they may be in conflict with the Mohegan Tribal Law. The law of self-defense in the State of Connecticut is set out in Connecticut General Statutes 53al9, The Court is aware of no Tribal Law either statutory or judicial, which is contrary to the provisions of this statute. 53a-19 Subsection (a) states:
“(a) Except as provided in subsections b and c of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such oth *553 er person is 1. Using or is about to use deadly physical force; or 2. Inflicting or about to inflict great bodily harm.
(b). Notwithstanding the provisions of subsections (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety 1. By retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in Section 53a-lQ0, or place of work and was not the initial aggressor,.... ”
This statute clearly indicates that under Connecticut law an actor is entitled to use reasonable physical force to defend himself from the use of or imminent use of physical force upon him, and that the actor may use the degree of force which he reasonably believes to be necessary for such purpose. Furthermore, there is no duty to retreat in Connecticut except when the use of deadly physical force may be involved. Even then, an actor need not retreat to avoid using deadly physical force if he is in his own dwelling, or place of work.
In this case it is clear that deadly physical force was never an issue. It is also clear, that the incident took place in Mr. Shockley’s place of work. Under Connecticut law, Mr. Shockley was under no duty to retreat and was entitled to use reasonable physical force to defend himself. In fact, the Hearing Officer clearly found that Mr. Shockley’s use of force in this case was in self-defense. The Hearing Officer goes on to find that Mr. Shockley did not retreat, but stood his ground when Mr. Gibson moved towards him in an aggressive manner.
In Paragraph Eleven of his findings, the Hearing Officer states:
“Mr. Shockley’s gaming license will be revoked for his confrontation with Mr. Gibson. His actions went beyond self defense in remedying this situation.”
The Hearing Officer’s conclusions are clearly erroneous based upon the substantive law of self-defense in the State of Connecticut. Mr. Shockley’s conduct did not go beyond self-defense under the circumstances of this case. Under the Statute cited above, he was not required to retreat since he was in his own work place and there was no deadly force involved. There were no Findings of Fact that Mr. Shockley used any force more than was necessary to prevent the attacker from coming at him again. The error in Mr. Shockley’s conduct according to the findings of the Hearing Officer was apparently that he stood his ground. Clearly, this is not the law in Connecticut and Mr. Shockley was entitled to stand his ground in his own place of work. Furthermore, there is nothing in the Record that would justify a finding under Section 5(e) of the Tribal State Compact that Mr. Shockley’s conduct poses a threat to the effective regulation of gaming or creates or enhances the chances of unfair or illegal practices in the conduct of the gaming activity, nor is there any claim in this case the Mr. Shockley ever failed to provide or reveal any information which would be untrue or misleading in connection with his license application.
Under the circumstances, the Hearing Officer’s decision is reversed and it is hereby ordered that Mr. Shockley’s license be reinstated immediately.
The Court reserves any decision regarding back pay/lost wages pending the Court of Appeals decision in MacLean v. Office of the Director of Regulation.